UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| TODD PETERSON, ON BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED, <br><br> *Plaintiff*, <br><br> v. <br><br> YELLOWJACKET OILFIELD SERVICES, LLC, <br><br> *Defendant*. | CASE NO. 6:14-cv-66 <br><br> COLLECTIVE ACTION |

## ORIGINAL COMPLAINT

### SUMMARY

1. Yellowjacket Oilfield Services, LLC (Yellowjacket) did not pay its Torque and Test Operators overtime as required by the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the FLSA). Instead, Jellowjacket paid them a salary with no overtime pay for hours worked over forty in a workweek. This collective action seeks to recover the unpaid overtime wages and other damages owed to these employees.

### JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3. All parties are subject to personal jurisdiction in the Southern District of Texas.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 (b) & (c) because Jellowjacket resides in this District and most of the relevant facts occurred in this District.

**PARTIES**

5. Plaintiff Todd Peterson was employed by Yellowjacket as a Torque and Test Operator. His written consent is attached.

6. Yellowjacket is a Texas limited liability company with its principal office located in Victoria, Texas.

7. "Potential Class Members," or "Class Members" are Torque and Test Operators employed by Jellowjacket within the past three years.

**FACTS**

8. Yellowjacket is an oilfield services company providing a variety of services, including hydrostatic pressure testing for drilling, production and pipeline applications.

9. Yellowjacket's Torque and Test Operators, including Peterson, are the employees who provide Yellowjacket's hydrostatic pressure testing services. These employees, including Peterson, connect high pressure water pumps to equipment that is to be tested, torque everything down and maintain the system under pressure until the test is over.

10. Yellowjacket's gross annual revenues have well exceeded the FLSA's $500,000 threshold for enterprise coverage for at least each of the last three years.

11. Jellowjacket's employees routinely use, handle, sell, or work on vehicles, pumps, hoses, tools, and telephones. These items were produced for interstate commerce or actually traveled in interstate commerce.

12. Jellowjacket is a covered enterprise under the FLSA during at least each of the last three years because it met the $500,000 gross revenue threshold and because its employees used, handled, sold or worked on goods or materials that were produced for interstate commerce or actually traveled in interstate commerce.

13. Jellowjacket employed Peterson from July 2014 to mid-September 2014.

14. Jellowjacket paid Peterson and the Class Members a bi-monthly salary with no overtime pay. Peterson's salary was about $36,000 per year.

15. Peterson and the Class Members regularly worked in excess of the FLSA's forty-hour weekly threshold for overtime pay. Specifically, Peterson and the Class Members usually worked seven days per week, in excess of twelve hours per day.

16. Peterson often began his workday as early as 3 a.m. and worked until he was relieved, which was often around 7 p.m. or later. The Class Members worked similar hours. Accordingly, Peterson and the Class Members regularly worked in excess of 84 hours per week.

17. Although it is well-known that blue-collar oilfield workers such as Jellowjacket's Torque and Test Operators are not exempt from overtime pay under the FLSA, Jellowjacket did not pay Peterson or the Class Members the additional overtime premium required by the FLSA for hours worked in excess of forty in a workweek.

18. Jellowjacket did not keep records of the hours Peterson and the Class Members worked.

19. Although Jellowjacket did not keep records of the hours Peterson and the Class Members worked, Jellowjacket knew they worked many hours in excess of forty per week and that they were not paid overtime.

20. Jellowjacket received multiple complaints about its failure to pay overtime. Despite these complaints, Jellowjacket did not change its payroll practices.

## COLLECTIVE ACTION ALLEGATIONS

21. In addition to Peterson, Jellowjacket employed the Class Members. The Class Members, who were all employed as Torque and Test Operators, performed the job duties described above in paragraph 9.

22. Like Peterson, the Potential Class Members also regularly worked at least 84 hours per week with no overtime pay and were paid a salary. Thus, the Potential Class Members are similarly situated to Peterson because they were subject to the same unlawful payroll practice as Peterson. Jellowjacket employed several dozen of the Potential Class Members over the last three years.

23. The Potential Class Members should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b). Therefore, the class is properly defined as:

**All Torque and Test Operators employed by Jellowjacket since November 22, 2011.**

### Cause Of Action

24. By failing to pay Peterson and the Potential Class Members overtime at one-and-one-half times their regular rates, Jellowjacket violated the FLSA's overtime provisions.

25. Jellowjacket owes Peterson and the Potential Class Members overtime wages equal to at least one-half times their regular rates for each overtime hour they worked during the three year period prior to filing their consent forms.

26. Jellowjacket knew, or showed reckless disregard for whether, its failure to pay overtime violated the FLSA. Accordingly, Jellowjacket's failure to pay overtime to Peterson and the Potential Class Members was willful and Jellowjacket owes them overtime wages for at least the past three years.

27. Jellowjacket is liable to Peterson and the Potential Class Members for an amount equal to all unpaid overtime wages.

28. Peterson and the Potential Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

### Prayer

Peterson prays for relief as follows:

1. An order allowing this action to proceed as a collective action under the FLSA

and directing notice to the Potential Class Members;

     2.     Judgment awarding Peterson and the Potential Class Members who join this collective action all unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA;

     3.     An award of post-judgment interest on all amounts awarded at the highest rate allowable by law; and

     4.     All such other and further relief to which Peterson and the Potential Class Members are justly entitled.

                                                  Respectfully submitted,

                                                **BRUCKNER BURCH PLLC**

                                                **/s/ David I. Moulton**
By: _____
     David I. Moulton
     State Bar No. 24051093
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
(713) 877-8788 - Telephone
(713) 877-8065 - Facsimile
dmoulton@brucknerburch.com